IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00456-PSF-MJW

DEBORAH STEELE,

      Plaintiff,

v.

KROENKE SPORTS ENTERPRISES, L.L.C.;
PAUL ANDREWS, in his individual and official capacities; and
DOUG ACKERMAN, in his individual and official capacities,

      Defendants.

---

### ORDER ON PENDING MOTIONS

---

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. # 59).  The motion is fully briefed and ready for disposition.  This Order also addresses Defendants' Unopposed Motion to Supplement (Dkt. # 103), and Plaintiff's Motion for Leave to File Sur-Reply (Dkt. # 104).

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Deborah Steele brings this employment discrimination case, alleging sex discrimination, age discrimination, Family and Medical Leave Act ("FMLA") violations, retaliation and defamation in connection with her employment at and subsequent termination from Defendant Kroenke Sports Enterprises, L.L.C. ("Kroenke Sports"). Defendants claim they had legitimate nondiscriminatory reasons for the adverse employment actions about which Ms. Steele complains, specifically that plaintiff violated company policy by knowingly selling event tickets to ticket brokers.

The following facts, most of which occurred in a relatively short time period from September 2003 to March 2004, are undisputed.  Ms. Steele began working for Kroenke Sports in 2000, when it acquired the Pepsi Center where she had been working for Ascent Entertainment, which operated the Pepsi Center, since 1999. In September 2000, she was promoted to Corporate and Special Events Manager, and promoted again in December 2001 to Director of VIP Sales and placed in charge of selling All Access Club memberships.  Her direct supervisor was Doug Ackerman, and she also reported indirectly to Paul Andrews.

On September 29, 2003, Mr. Ackerman urged plaintiff to "pitch" for a job at the Universal Lending Pavilion ("ULP"), a concert venue run as a joint venture between Defendant Kroenke Sports and nonparty Clear Channel Entertainment, selling corporate sponsorships.  Ms. Steele claims she was reluctant to pursue the position, noting concerns with the direction the venue was going and with working under Tom Felling at ULP.  Steele Dep. at 106:18-107:9, attached as Ex. A-1 to Defs.' Br. Supp. S.J. (Dkt. # 60).  However, Mr. Ackerman and David Ehrlich, Executive Vice President at Kroenke Sports, allegedly told plaintiff they wanted her to take the position.  Such a change in position for Ms. Steele would also allow Kate Becker, who had been assisting Ms. Steele, to begin selling the All Access memberships for which Ms. Steele had been responsible.

Mr. Ehrlich met with Clear Channel's representative about the position and allegedly learned that Clear Channel did not want Ms. Steele in the position. Mr. Ehrlich apparently was apprised of negative interactions between plaintiff and Clear

Channel, a representative of which, according to Mr. Ehrlich, stated that "Clear Channel did not feel [Ms. Steele] had the appropriate working relationship to take on that role, given her prior poor communication with them."  Ehrlich Dep. at 39:14-40:5, attached as Ex. A-4 to Defs.' Br. Supp. S.J.  Mr. Ehrlich stated that he did not challenge Clear Channel's position, given the "fifty-fifty partnership.  And there were certain things that were more important to us, and certain things that were more important to them.  But we thought it was reasonable in this case to give in to what they wanted."  *Id.* at 43:12-44:2.  However, plaintiff contends, and Mr. Ackerman disputes, that he later informed her that it was stated that she was "not young and hip enough for the job."[1] Steele Dep. at 112:23-113:3; Ackerman Dep. at 88:7-12, attached as Ex. A-3 to Defs.' Br. Supp. S.J.  Ms. Steele did not know who at Clear Channel had allegedly made the comment.  *Id.* at 113:21-22.  The job eventually went to Derek Carosi, a candidate from the Clear Channel side, who plaintiff contends is a younger male with less experience than plaintiff.  Pl.'s Resp. at 5 (citing Steele Dep. at 119:6-13).

Soon after the job opportunity at ULP, plaintiff's salary was significantly decreased from a base of $50,000 to $30,000 and her commission structure was modified.  Mr. Ackerman and Mr. Andrews testified that this change was in response to the performance of the All Access Club and an attempt to encourage plaintiff to make sales calls and bring in new business rather than simply maintaining current business. Ackerman Dep. at 72:18-73:7; Andrews Dep. at 173:9-23, attached as Ex. A-2 to Defs.'

---

[1]  Ms. Steele states that she was 50 years old during 2003, Pl.'s Resp. at 2, as well as at the time of her termination in March 2004, Am. Compl. at ¶ 78.

Br. Supp. S.J.  Additionally, Ms. Becker was moved into a selling position, selling the

same All Access memberships as Ms. Steele,  and no longer assisted Ms. Steele.

Plaintiff complained about the new situation to Mr. Ackerman.  Ackerman Dep. at

101:18-102:8.

Ms. Steele began experiencing panic attacks and anxiety and contends that

Mr. Ackerman began to treat Ms. Becker, age 43, more favorably than Plaintiff and

began to critique and criticize Plaintiff's performance.  On October 20, 2003 plaintiff

complained to Human Resources about her panic attacks, Mr. Ackerman's treatment of

her, her change in compensation, and her failure to get the ULP job.  Plaintiff requested

FMLA leave from October 27, 2003 through November 3, 2003, which was granted.

Although she was on FMLA leave, Ms. Steele came to work on October 30, 2003

to assist with a pre-arranged concert.  Although he knew she was out on leave for that

week, Mr. Ackerman called her into his office that day "frustrated" that he didn't know

what was going on.  Ackerman Dep. at 182:1-18.  Plaintiff contends that he angrily

demanded to know the reasons for her FMLA leave and threatened to discipline her,

giving her a verbal warning.  Pl.'s Resp. at 11 (citing Steele Aff. at ¶¶ 37-38 and her

deposition testimony).  After Ms. Steele returned to work following her FMLA leave,

Mr. Ackerman began auditing her commissions, and she contends that she was denied

the boilerplate contract necessary for selling VIP boxes at ULP.  Steele Dep. at

169:1-15.  Ms. Steele also describes other adverse treatment upon her return.

See Pl.'s Resp. at 12-14 (citing Steele Aff. and Dep.).

According to Mr. Ackerman and disputed by Ms. Steele, Kroenke Sports had an unwritten policy for employees not to sell tickets to ticket brokers.  Ackerman Dep. at 37:15-38:6; Steele Dep. at 213:1-9.  In late February 2004, Mr. Andrews allegedly received a phone call from an individual who worked for Alliance Tickets, a ticket broker.  The caller allegedly identified two individuals from Kroenke Sports–plaintiff and Robert Kinnard–who were calling and faxing Alliance Tickets.  Andrews Dep. at 79:13-84:15.  Mr. Andrews and Mr. Ackerman began an investigation into the situation.  Eventually Mr. Kinnard, after admitting that he was personally profiting from his dealings with ticket brokers, resigned and accepted a settlement package.  A third employee who was found to have made phone calls to Alliance Tickets denied wrongdoing and was given a warning.  Ms. Steele admitted that she had sold tickets to Alliance Tickets, but only "in the normal course of her duties."  Pl.'s Resp. at 18 (citing Steele Dep. at 201:23-203:16).  Defendants have no evidence that plaintiff personally profited from selling these tickets (*see* Ackerman Dep. at 136:5-11), yet plaintiff was suspended pending further investigation, and terminated the following week.  Plaintiff claims that following her termination, defendants failed to keep certain information confidential and that various individuals told her that they had heard she had been fired for scalping tickets.  *See* Pl.'s Resp. at 22-23.

Plaintiff filed suit against Kroenke Sports, Mr. Andrews and Mr. Ackerman on March 11, 2005, and filed an Amended Complaint on March 24, 2005.  She asserts seven claims for relief: 1) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") against Kroenke

Sports; 2) retaliation in violation of Title VII against Kroenke Sports; 3) age

discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §

621 *et seq.* ("ADEA") against Kroenke Sports; 4) retaliation in violation of the ADEA

against Kroenke Sports; 5) violation of FMLA of 1993, 29 U.S.C. § 2601 *et seq.* against

Kroenke Sports; 6) retaliation in violation of FMLA against Kroenke Sports; and 7)

defamation against Andrews and Ackerman.  Defendants filed the instant motion on

December 30, 2005, claiming that they are entitled to summary judgment on each of

these claims.  Defs.' Br. Supp. S.J. at 2.

## II.  STANDARD OF REVIEW

        Summary judgment is appropriate under F.R.Civ.P. 56(c) "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v.

Catrett*, 477 U.S. 317, 322-23 (1986).  When applying this standard, a court reviews the

pleadings and the documentary evidence in the light most favorable to the nonmoving

party.  *See Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).  To

defeat a properly supported motion for summary judgment, "there must be evidence on

which the jury could reasonably find for the" nonmoving party.  *Panis v. Mission Hills

Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert.  denied*, 516 U.S. 1160 (1996)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In addition,

"'where the non moving party will bear the burden of proof at trial on a dispositive issue'

that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make

6

a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

## III.  ANALYSIS

### A.  Title VII and ADEA Claims of Sex and Age Discrimination

#### 1.  Termination

Ms. Steele claims that her termination was the result of both sex and age discrimination.  To survive summary judgment on such a claim, a plaintiff must first make a *prima facie* showing of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action.  *Id.* If the defendant makes such a showing, the burden shifts back to the plaintiff to show that the defendant's justification is a mere pretext for discrimination.  *Id.* at 802-04.

Here, defendants have assumed plaintiff has established a *prima facie* case of discriminatory discharge.  Defs.' Br. Supp. S.J. at 19.  Additionally, Kroenke Sports has articulated a legitimate, nondiscriminatory reason for plaintiff's termination–that plaintiff was dealing with known ticket brokers contrary to its unwritten policy and the Denver Municipal Code.  *Id.* and n.6; *see also Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir.), *cert. denied*, 528 U.S. 814 (1999) (describing the light burden of defendant in articulating legitimate reason for discharge); *Johnson v. Potter*, 156 Fed. Appx. 61, 63 (10th Cir., Nov. 23, 2005) (same).  The burden now shifts to plaintiff to show that this reason was merely pretextual.

7

A plaintiff can show pretext by providing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Morgan v. Hilti, Inc.* 108 F.3d 1319, 1323 (10th Cir.1997) (citations and internal quotation marks omitted).  Here, Ms. Steele provides evidence that no such policy against selling tickets to known ticket brokers ever existed.  *See* Brockmeier Dep. at 52:10-18, attached as Ex. 6 to Pl.'s Resp. (written policy following Ms. Steele's termination was the only policy he was made aware of); Steele Dep. at 213:1-9 (there was no policy).

The existence and enforcement of a policy appears to be a factual dispute rendering summary judgment inappropriate where defendants have assumed a *prima facie* case of discriminatory discharge.  The inconsistencies as to the existence of any policy, where plaintiff contends that all of her sales contracts were "turned in on a monthly basis for review" and thus presumably approved by Kroenke Sports, Steele Dep. at 209:14-18, could allow a reasonable jury to disbelieve defendants' explanation for plaintiff's termination.  *See also Wells v. Dynamic Restaurants LLC*, 2006 WL 118397 at *11 (D. Colo., Jan. 13, 2006) (finding possible pretext where "the existence of a uniform policy or practice is in doubt") (citing *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1040 (7th Cir. 1993)).  This is especially true where plaintiff's uncontradicted sworn statement indicates that she had only one prior disciplinary incident during her employment with Kroenke Sports–the verbal warning from

Mr. Ackerman after Ms. Steele allegedly failed to communicate with him about her

FMLA leave.  *See* Steele Aff. at ¶ 39.

Defendants' argument that plaintiff was fired for violating the Denver Municipal

Code is also not sufficient to award summary judgment here, where they provide no

evidence that the Denver Municipal Code was a factor in the suspension or termination

discussions.  Rather, plaintiff provides unrefuted evidence that the Code was never

mentioned in connection with her employment or termination.  *See* Steele Aff. at ¶ 51

("During my employment with Kroenke Sports, I did not hear anything about the Denver

Municipal Code regarding my job."); Pl.'s Resp at 27.  Post-hoc justifications, even if

legitimate, are more supportive of an inference of pretext than summary judgment.  *See*

*Plotke v. White*, 405 F.3d 1092, 1103-04 (10th Cir. 2005) (evidence of pretext includes

an "inference that the employer's preferred non-discriminatory reasons were either a

*post hoc* fabrication or otherwise did not actually motivate the employment action.")

(internal citations, bracket and quotation marks omitted); *Tyler v. RE/MAX Mountain*

*States, Inc.*, 232 F.3d 808, 813 (10th Cir. 2000) ("We are disquieted, however, by an

employer who 'fully' articulates its reasons for the first time months after the decision

was made.").  Plaintiff has met her burden to show sufficient evidence of possible

pretext and survive summary judgment on her termination claim.  Her other evidence of

pretext is thus unnecessary to address.

### 2.  ULP Position

Plaintiff contends that she was denied the ULP position because of her age

and sex.  She claims that she has direct evidence of age discrimination by way of

Mr. Ackerman's alleged comment reporting that someone else determined that she was not "young and hip enough."  See Pl.'s Resp. at 28-29; Steele Dep. at 112:3-6. Although plaintiff acknowledges that neither Mr. Ackerman nor Mr. Ehrlich made the statement (Steele Dep. at 113:1-22), she contends that defendants "made or agreed to the decision to place [a younger male] in the position after being informed of the discriminatory reasons for Plaintiff's non-selection."  Pl.'s Resp. at 29.

In order to establish a *prima facie* case for Title VII or ADEA discrimination, a plaintiff must show that 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position; and 4) she was treated less favorably than others not in the protected class.  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998).  Here, defendants contend that Ms. Steele cannot show that denial of the ULP position constituted an adverse employment action.

An adverse employment action is one that results in "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  The Tenth Circuit has held that a mere inconvenience or an alteration in job responsibilities does not constitute adverse employment action.  *Sanchez*, 164 F.3d at 532.  The employer's conduct must be "materially adverse" to the employee's job status.  *Wells v. Colo. Dept. of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003). This includes acts that put the employee at "a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects."  *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239

10

(10th Cir. 2004) (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

Plaintiff has not met her burden to show that denial of the ULP position was an adverse employment action. Her evidence does not show that the ULP job was a promotion, only that it was a different position from her then current job. *See* Steele Dep. at 117:14-23 (testimony that plaintiff did not know about salary, commission structure, or other terms of employment).[2] Further, plaintiff testified that she had significant issues with the ULP job that made it less attractive. *See id.* at 106:18-107:9; *see also Evans v. Federal Exp. Corp.*, 76 Fed. Appx. 263, 265 (10th Cir., Sept. 26, 2003) (no adverse action where evidence suggested job change was not actually a promotion and that plaintiff had not even applied for the position in question); *Henderson v. United Parcel Service*, 2006 WL 1658690 (D. Colo., June 7, 2006) (denial of lateral transfer is not an adverse employment action even though it is desirable to plaintiff) (citing *Sanchez*, 164 F.3d at 532 (denied transfer to position involving substantially similar duties was not an adverse employment action, even where plaintiff viewed it as a positive one)). Here, the record suggests that the ULP job was a benefit to her employer more than to Ms. Steele. *Id.* at 109:8-17. Thus, plaintiff

---

[2] This testimony is arguably contradicted by Ms. Steele's later affidavit stating that she "understood there would be no change in my base pay but that the opportunity would allow for an increased commission potential." Steele Aff. at ¶ 19. Plaintiff cannot create a material factual dispute by her own directly inconsistent statements. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."). This is especially true where plaintiff's later statement in her affidavit is not supported by any other evidence in the record.

has not met her burden to show a *prima facie* case of discrimination as to the ULP position.

### 3. Change in Compensation

Ms. Steele contends that her reduction in compensation from $50,000 to $30,000 in October 2003 was a discriminatory action based on her age and sex. Defendants assume for purposes of summary judgment that plaintiff has established a *prima facie* case of discrimination, Defs.' Br. Supp. S.J. at 26, and thus the burden shifts to defendants to articulate a legitimate nondiscriminatory reason for the compensation reduction. Defendants provide such a reason, stating that the reduction was "based on the performance of the All Access Club and to bring her base salary in line with other sales people" and to give plaintiff an incentive to make new sales calls. *Id.* at 26-27 (dep. citations omitted).

Plaintiff argues that these stated reasons were mere pretexts for discrimination, claiming that the All Access Club was actually performing at the same level or better than the previous year and that her pay was reduced below the levels of other sales people. Pl.'s Resp. at 32; *see also* Salary Comparison Chart, attached as Ex. 12 to Pl.'s Resp. Further, Ms. Becker, who had been performing assistant work for Ms. Steele, now had a higher base salary than did Ms. Steele. *See* Ackerman Dep. at 109:11-13 (stating that Ms. Becker's salary was in the $31,000 range).

Not only is a $20,000 reduction in annual compensation significant, but defendants provide no evidence that any other commissioned employee received a reduction at all, or that a $30,000 base salary was actually "in line with other sales

people." *See* Ex. 12, Salary Comparison Chart.  Plaintiff has met her burden to raise a genuine question of fact as to possible "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Morgan*, 108 F.3d at 1323 (citations and internal quotation marks omitted).  Although defendants complain that plaintiff challenges their business judgment "without any direct or circumstantial evidence of sex discrimination," Defs.' Br. Supp. S.J. at 28, they have conceded for purposes of their motion a *prima facie* case of discrimination, and after establishing a *prima facie* case, plaintiff's burden is merely to raise a genuine issue as to whether defendants' articulated legitimate reason is pretextual.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").  Summary judgment is thus inappropriate on plaintiff's claim of age and sex discrimination as to her compensation reduction.

**B.  Title VII and ADEA Claims of Retaliation**

Plaintiff alleges that she was retaliated against in violation of Title VII and the ADEA after engaging in the following protected activity: 1) complaining to Mr. Ackerman in early October 2003 that her rejection from the ULP position in favor of Mr. Carosi was unfair; 2) complaining to Mr. Ackerman in mid-October 2003 about her reduced compensation and more favorable treatment of Ms. Becker; and 3) complaining to

Human Resources on or about October 20, 2003 about the ULP position and the "young and hip" comment, the selection of Mr. Carosi, her salary reduction, the loss of Ms. Becker as her assistant, the favorable treatment of Ms. Becker, and the hostile treatment of plaintiff by Mr. Ackerman.  Pl.'s Resp. at 34.

To establish a *prima facie* case of retaliation, a plaintiff must present evidence that: 1) she engaged in protected activity in opposition to Title VII or ADEA discrimination, 2) she was subjected to an adverse employment action, and 3) there is a causal connection between the protected activity and the adverse employment action. *See Sanchez*, 164 F.3d at 533.  Plaintiff's first two descriptions of alleged protected activity–complaining to Mr. Ackerman about the ULP position and the salary reduction– cannot form the basis of a Title VII or ADEA retaliation claim where she does not allege that she ever mentioned sex or age discrimination or otherwise demonstrated a nexus between the alleged protected activity and the adverse employment action.  Pl.'s Resp. at 36-37 (describing only complaints that the ULP position and salary change were unfair); *see Petersen v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (concluding that the absence of a reference to unlawful discrimination precludes a retaliation claim because an employer cannot engage in unlawful retaliation if it does not know that the employee at least in part is in engaging in protected opposition).

Defendants assume that plaintiff's complaint to Human Resources on October 20, 2003 regarding the "young and hip" comment constituted protected activity.  Defs.' Reply Br. at 34-35.  The only alleged adverse employment action after October 20,

14

2003 was plaintiff's termination, in March of 2004.[3]  Plaintiff argues that temporal proximity establishes the requisite causal connection.  *See* Pl.'s Resp. at 36.

An adverse action must be "*very closely* connected in time to the protected activity" in order for "mere temporal proximity" to establish a causal connection inference.  *See Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 109, 1121 (10th Cir. 2005) (emphasis in original) and cases cited therein.  As recognized by the Tenth Circuit in *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004), a "six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient."  Here, nearly five months went by between the claimed protected activity and the alleged retaliation, which is not sufficient to establish the requisite causal connection.  Moreover, there is no evidence that Mr. Ackerman or Mr. Andrews ever was apprised of her complaint to Human Resources.  *See Petersen*, 301 F.3d at 1188 ("an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII").  Plaintiff offers no other evidence to support a causal connection. Defendants are thus entitled to summary judgment on plaintiff's Title VII and ADEA retaliation claims.

### C.  FMLA Violations

---

[3]  Plaintiff argues that her administrative workload and paperwork requirement increased and that Mr. Ackerman began avoiding her.  Pl.'s Resp. at 37.  However, she does not present any evidence to support that these actions were adverse, or that they would have dissuaded a reasonable worker from asserting her ADEA rights.  *See Burlington Northern and Santa Fe Ry. Co. v. White* , 126 S.Ct. 2405, 2415 (2006) (internal quotation marks omitted) (evaluating adverse employment actions in a retaliation context).

Plaintiff claims that defendants violated the FMLA by interfering with her rights and retaliating against her for exercising those rights, pursuant to 29 U.S.C. §§ 2615(a)(1) and (2), respectively.  As to the first claim, Ms. Steele can establish a *prima facie* case by showing that she was entitled to FMLA leave, she was denied substantive rights under FMLA by her employer, and a causal connection between the two exists.  *See Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

Plaintiff has not provided sufficient evidence that she was denied any substantive rights under FMLA.  She has not shown that she was denied any requested FMLA leave.  *See* Steele Dep. at 155:6-13.  Her alleged "remov[al] from her director position upon her return from FMLA," Pl.'s Resp. at 38-39, is unsupported by the evidence, which shows that she was informed of changes to her and Ms. Becker's positions in early October, before she sought FMLA leave.  Steele Aff. at ¶¶ 16-17; Steele Dep. at 187:9-23; Am. Compl. at ¶ 27.  Further, plaintiff testified that she was restored to the same position upon her return.  Steele Dep. at 179:11-13.  Finally, the verbal warning she received from Mr. Ackerman, even assuming it was directly related to her FMLA leave (as opposed to her alleged lack of communication regarding an upcoming show), did not deny plaintiff any substantive FMLA rights.  Plaintiff cites no authority to support the notion of an FMLA right to secrecy or privacy as to why FMLA leave is being taken vis-à-vis an immediate supervisor, and she does not show how the verbal warning affected any subsequent leave sought and/or taken.

As for the FMLA retaliation claim, plaintiff contends that the verbal warning constituted unlawful retaliation for her protected activity.  Pl.'s Resp. at 40.  Plaintiff

however offers no evidence that a "reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from" asserting her FMLA rights. *Burlington Northern and Santa Fe Ry. Co.*, 126 S. Ct. at 2415 (internal quotation marks omitted). Moreover, caselaw suggests that the verbal warning is not a sufficient adverse action to support a retaliation claim. *See Wells*, 325 F.3d at 1214 (mere "unsubstantiated oral reprimands" are not in themselves materially adverse). Other retaliatory behavior alleged by plaintiff—promotion for Ms. Becker, reduction in supervisory authority of plaintiff, and hostile working environment upon return from FMLA leave—either occurred prior to her request for leave or lack evidence to survive summary judgment. Therefore, defendants are entitled to summary judgment on plaintiff's FMLA interference and retaliation claims.

### D. Defamation

Ms. Steele contends that defendants are responsible for publishing defamatory statements regarding her termination that prohibited her from obtaining other employment. Pl.'s Resp. at 43. To establish a *prima facie* case of defamation under Colorado law, plaintiff must show the following: 1) a defamatory statement; 2) that is published to a third party; 3) that amounts to at least negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff caused by the publication. *Williams v. District Court*, 866 P.2d 908, 911 n.4 (Colo. 1993) (cited by the Tenth Circuit in *Zerr v. Johnson*, 85 F.3d 641 at *2 n.4 (Table) (10th Cir., May 6, 1996)). Plaintiff contends that

17

defendants' conduct amounted to defamation *per se*, and therefore actionable without proof of special damages, alleging that the publication was a statement challenging her profession or trade. *See Denver Publishing Co. v. Bueno*, 54 P.3d 893, 899 n.9 (Colo. 2002).

Defendants claim that the published statement–Mr. Ackerman announcing at a directors' meeting that Ms. Steele had been terminated for dealing with brokers–was true. Defs.' Br. Supp. S.J. at 45. "Truth is a complete defense to defamation." *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). Here, plaintiff herself admits that she was dealing with brokers. *See* Pl.'s Resp. at p. 18, ¶ 124 (citing Steele Dep. at 201:23-203:16). Further, she admits that she told Mr. Ackerman that she dealt with ticket brokers. *Id.* Plaintiff provides no admissible evidence to support, and indeed does not contend, that Mr. Ackerman or Mr. Andrews ever made false statements about "ticket-scalping," which some potential employers apparently heard.[4] *See* Pl.'s Resp. at 42-43. Therefore, defendants are entitled to summary judgment on plaintiff's defamation claim.

## IV. OTHER PENDING MOTIONS

### A. Defendants' Unopposed Motion to Supplement

Defendants request permission to file a supplement to their Objections to Plaintiff's Trial Exhibits, as plaintiff's counsel belatedly provided copies of two exhibits

---

[4] Plaintiff's proposed Sur-Reply includes an affidavit from a former Kroenke Sports employee stating that the had been told by another Kroenke employee, John Scheck, that "it was announced in Doug Ackerman's Directors' meeting that Ms. Steele was fired for scalping tickets." Kuper Aff., attached as Ex. 2 to Pl.'s Proposed Sur-Reply (Dkt. # 104). This is hearsay as to Mr. Ackerman or Mr. Andrews, and Ms. Steele has not provided any admissible evidence that either Mr. Ackerman or Mr. Andrews ever made such a statement.

to defendants' counsel.  The motion is unopposed.  The Court GRANTS Defendants' Motion to Supplement, and accepts their attached supplement (Ex. A-1) to their objections to plaintiff's trial exhibits.

**B.  Plaintiff's Motion for Leave to File Sur-Reply**

Plaintiff seeks to file a Sur-Reply to defendants' Reply, attaching an additional affidavit of her own as well as a new affidavit of a former Kroenke Sports employee. Defendants oppose the motion.  The Court finds that nothing in the proposed Sur-Reply affects the analysis herein, and therefore denies as moot plaintiff's motion.

**V.  CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt. # 59), filed March 31, 2006, is GRANTED as to plaintiff's Title VII and ADEA claims regarding the ULP position, Title VII and ADEA retaliation, FMLA interference, FMLA retaliation, and defamation.  Defendants' Motion for Summary Judgment is DENIED as to plaintiff's claim for termination and compensation reduction in violation of Title VII and ADEA.  Defendants' Unopposed Motion to Supplement (Dkt. # 103) is GRANTED. Plaintiff's Motion for Leave to File Sur-Reply (Dkt. # 104) is DENIED as moot.

DATED: July 18, 2006

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge